At about 7:30 or 8 o'clock, p.m., of December 28, 1942, Clarence Davis left Jennings in a DeSoto automobile belonging to Ellis Lewis, and in company with his common-law wife, Rosa May Bill, he drove to Nome, Texas, arriving at the latter place some time before 11 o'clock, p.m., that night, 'and returning from Nome at about 11 o'clock, p.m., he arrived at Beaumont on the return trip at about midnight. It appears that they remained in Beaumont until about 2 o'clock in the morning, at which time they resumed their return trip to Jennings. At about 4:30 or 5 o'clock in the morning, upon arriving at a point between Welsh and Lacassine, Clarence Davis drove the DeSoto automobile in the rear of a gasoline truck belonging to Ira A. Nichols just as the said gasoline truck was in the act of passing another heavy truck, belonging to Sharman Allen, which was parked on the south paved portion of the highway. As a result of the collision, Rosa May Bill, the guest of Clarence Davis, who was apparently asleep on the seat beside him, was killed, and Clarence Davis sustained various personal injuries, and the DeSoto automobile was damaged. This suit was instituted by George Bill, father of Rosa May Bill, for her death, and by Clarence Davis for his personal injuries, and by Ellis Lewis and his insurer, Franklin Fire Insurance Company, for the damages to the automobile, against Sharman Allen, a Houston partnership, and against Ira A. Nichols, a resident of Duncan, Oklahoma, alleging, in effect, that they were joint tort-feasors in that the Sharman Allen truck had been parked or stalled on the paved portion of the highway for several hours without lights or flares or signals of any kind, and the Nichols truck immediately prior to the accident, had parked beside it without any lights or flares of any kind.
The defendants in their answer admitted that the accident had occurred at about the time and place alleged, and admitted that Rosa May Bill died as a result of injuries sustained in the accident; that Clarence Davis received some personal injuries; and that the DeSoto automobile was damaged, but they deny liability contending that the accident was caused solely by the gross negligence of Clarence Davis in driving the DeSoto automobile at an excessive rate of speed and without keeping a proper lookout into the rear of the Nichols truck which had just started to pass the stalled Sharman Allen truck and which Nichols truck was in motion at the time of being struck and had its lights, *Page 706 
including its side clearance lights and its rear taillights, burning and could easily have been seen by a prudent driver. In the alternative, the defendants plead that should the court find them guilty of negligence, then and in that event, the court should find that Clarence Davis was guilty of gross contributory negligence barring recovery.
On trial of the case, the District Court found that the accident was caused solely by the gross negligence of Clarence Davis, and accordingly dismissed the suit at plaintiffs' costs. Plaintiffs have appealed.
As set forth by the trial judge in his written opinion, there are four main factual issues presented in this case which are as follows:
1. Was the Nichols truck stopped on the highway or was it still moving when the car driven by plaintiff Davis crashed into it from the rear?
2. Did the Nichols truck have taillights burning at the time of the accident?
3. Was the plaintiff Davis, at the time he crashed into the Nichols truck, considering the conditions existing at the time, driving his car at a moderate rate of speed, and in a careful and prudent manner, and keeping a proper lookout, such as the law requires?
4. Assuming as a fact that the driver of the Sharman Allen truck was negligent in leaving his truck parked on the highway, without lights or flares, was such negligence the proximate or even remote cause of the accident?
On the question as to whether the Nichols truck was stopped or was moving at the time of the accident, we have the testimony of Norris, driver of the Sharman Allen truck, and Brooks, driver of the Nichols truck, to the positive effect that Brooks, driver of the Nichols truck, at a point about 100 feet from the stalled Sharman Allen truck, gradually slowed down and turned to the left to go around the stalled or parked truck, and that while in the act of so doing he was struck by the car driven by Davis, and that the Nichols truck never stopped until after being struck by the car driven by Davis. The only other eyewitness as to whether or not the Nichols truck was moving was Davis, and he did not testify one way or another on that point. It would seem therefore that the finding of fact of the trial judge on that point, to the effect that the Nichols truck was moving and was in the act of going around the Sharman Allen truck, in a proper and careful manner, is correct.
With reference to the question as to whether or not the Nichols truck had taillights burning, the overwhelming preponderance of the evidence is to the effect that both the taillights and side clearance lights were in good condition and burning at the time of the accident, and the only testimony to the contrary is the testimony of plaintiff Davis, who stated that he did not see any taillight. Having driven his car practically all night, it is easy to believe that he was in such condition that he did not see the lights until it was too late to avoid the accident.
With reference to the third factual question as to whether or not Davis was driving his car prudently and maintaining a proper lookout, as pointed out by the trial judge, in the light of the above-stated facts established by the evidence, it does not appear possible to explain this collision on any other basis than that the plaintiff Davis was not driving his car in a careful and prudent manner, and was not maintaining a proper lookout, or did not have his car under proper control. And it appears to us, as it did to the trial court, that a careful and prudent driver, and one who was maintaining a proper lookout at that hour of the night, could and would certainly have seen the lighted truck ahead and could and would have slowed down and brought his car under proper control so as to avoid crashing into the truck moving along ahead of him. It is contended by Davis that he was blinded by bright lights of an on-coming car, but while it might be true that he had been blinded by lights prior to the accident, the evidence does not indicate that at the time of the accident he could possibly have been blinded by on-coming traffic because it appears that the Nichols truck had just about reached the rear of the Sharman Allen parked truck and was in the act of passing it at the time Davis crashed into the Nichols truck, and under those circumstances if there was any on-coming car the lights of the on-coming car would have been hidden from view by the Nichols truck. It appears therefore that the oncoming traffic referred to by Davis had already passed him long enough before he *Page 707 
arrived at the scene of the accident for him to have avoided crashing into the Nichols truck if he had been driving prudently and if he had been keeping a proper lookout. We agree with the trial judge that there is no negligence shown on the part of the driver of the Nichols truck and that there is gross negligence shown on the part of Davis.
On the fourth question, the question of negligence on the part of the driver of the Sharman Allen truck, the evidence is to the effect that that truck was parked on the paved portion of the highway and that it had no lights or flares of any kind. The evidence shows further that this truck had been stalled for several hours. There does not seem to be any question that the driver of that truck was violating our traffic laws and was guilty of negligence, but it does not appear that this negligence in any way caused or contributed to the accident involved in this case. If the Sharman Allen truck had had its lights burning and had been traveling down the highway at a slow rate of speed, the Nichols truck would have attempted to pass it in the same manner as is shown herein and no doubt the accident would have occurred just the same. The fact that it was stalled, in other words, is not shown to have in any manner affected the driving of the Nichols truck, since the driver of the Nichols truck perceived this parked Sharman Allen truck at a distance of about one-fourth of a mile and thereupon made his plan to slow down at the proper place and to turn to his left in passing the truck, as he had a right to do. If Davis had been keeping a proper lookout, he certainly would have perceived the Nichols truck and would have understood from his maneuvers that there was something wrong ahead and would have been prepared to pass the stalled truck in the same manner that the Nichols truck was going to pass it and no accident would have occurred.
Thus it becomes clear that the negligence of the driver of the Sharman Allen truck was not a proximate cause of the accident, therefore there is no liability on the part of the defendant, Sharman Allen.
It is our conclusion that the finding of fact of the trial judge to the effect that this accident was caused solely by the gross negligence of Davis is correct and his judgment is therefore affirmed.